[Civ. No. 20870. Second Dist., Div. Two. July 20, 1955.]

LLOYD J. SEAY, Appellant, v. OTIS ALLEN et al., Respondents.

Lloyd J. Seay, in pro. per., and B. W. Kemper for Appellant.

Jesse A. Hamilton for Respondents.

MOORE, P. J.—Plaintiff appeals from a judgment denying his demand that his title be quieted in certain acreage which had been leased to him by the United States as potential oil land. He seeks a reversal on the grounds that (1) the findings do not support the judgment; (2) the evidence does not support the findings. Inasmuch as the latter ground contemplates a study of the transcript of the evidence, it cannot be considered on an appeal based solely as is this, upon the judgment roll and certain exhibits.

The findings are that a lease was executed February 1, 1946, under an act of February 25, 1920 (41 Stats. 437) as amended. (30 U.S.C.A., p. 402 et seq.) In April 1947 appellant contracted with Riley and Hill for the development of the oil resources underlying the half section so leased to him by the General Land Office. That firm thereupon sold various interests in such operating agreement to the individual defendants who by virtue thereof assert an interest in the oil land adverse to appellant. After such sales, Riley and Hill caused to be incorporated the Eagle Rock Petroleum Company, herein referred to as ''Eagle'' which acquired the rights of Riley and Hill in the operating agreement. Eagle obtained a permit for the issuance of securities. Thereafter on March 29, 1950, appellant assigned his lease to Eagle in consideration of 75,000 shares of its capital stock, and the operating agreement was cancelled. On April 18, 1950, the Bureau of Land Management approved the assignment. Thereupon Eagle posted a lessee's bond in the sum of $5,000 and complied with every term of the lease and with all terms of the permit to issue its shares. Drilling had been commenced as required, but had ceased February 11, 1949. The original lease to appellant expired January 31, 1951, and was not renewed or extended. In fact, it could not have been either renewed or extended for the excellent reason that Seay's assignment of the lease divested him of all interest in the land, as tersely observed by the Bureau of Land Management of the Department of Interior. Thereafter, Eagle leased the same land from the United States on August 1, 1951. The permit to issue shares of Eagle expired November 20, 1951.

Contrary to appellant's allegations, he made no demand that Eagle comply with the permit and continue drilling operations on the leased land; neither did the corporation refuse to do so. On December 3, 1951, appellant served upon Eagle a notice of rescission of his assignment of the lease and a demand for repossession, based upon the failure of Eagle to deliver the consideration for such lease.

At all times prior to the last mentioned date, but after the execution in February 1946 of the lease to appellant, the law provided* that the title holder of a ''noncompetitive lease

---

*Code of Federal Regulations: title 43, Public Lands: Interior.
''Section 192.130 *Preference right to a new lease.* Upon the expiration of its five-year term the record title holder of a noncompetitive lease issued prior to August 8, 1946 and maintained in good standing, who has not filed a notice of election pursuant to section 15 of the

issued prior to August 8, 1946, and maintained in good standing, who has not filed a notice of election pursuant to section 15 of the act of August 8, 1946, may apply for a new lease for same land pursuant to . . . Section 1 of the act of July 29, 1942 . . . provided the leased land is not then within the known geologic structure of a producing oil or gas field.'' (Code of Federal Regulations, title 43, Public Lands, p. 374, part 192, § 130.) At no time did appellant file or cause to be filed a notice of election pursuant to section 15 of the last quoted act or apply for a new lease. The oil and gas lease had been maintained in good standing. On January 19, 1951, Eagle applied for a new lease under act of August 8, 1946, *supra.*

On July 13, 1951, in the city of Los Angeles, California, a special meeting of the board of directors of Eagle was duly assembled, at which time it was unanimously resolved to complete the best deal obtainable in order to procure a new lease and to secure the issuance of the lessee's bond and negotiate for arrangements to produce oil and gas. At that time, appellant was present and stated that he at one time had people interested in the lease of the land but that they are no longer so because of the legal entanglement involving the corporation. Also, he there said that he was unable to assist in the procurement of the lessee bond.

August 1, 1951, a new lease (No. 085647) on the same land was issued to Eagle for a term of five years and so long thereafter as oil and gas are produced in commercial quantities. Also, Eagle procured the issuance of a lessee's bond, paid the premium and retained counsel to carry out the resolution of the board. Such new lease was acquired by virtue of the preferential rights of appellant which had been, by virtue of the transfer of his lease, assigned to Eagle.

On December 3, 1951, appellant gave notice of rescission of his assignment of lease on March 29, 1950, and nine days

---

act of August 8, 1946, may apply for a new lease for the same land pursuant to the provisions of section 1 of the act of July 29, 1942 (56 Stats. 726; 30 U.S.C. 226b), provided the leased land is not then within the known geologic structure of a producing oil or gas field. Any lease issued under this section will be for a period of five years and so long thereafter as oil or gas is produced as provided in section 17 of the act and will be subject to the rules and regulations then in force.

''To obtain such a new lease, the lessee must, within the period beginning 90 days prior to the date of expiration of the lease and ending on the date of expiration, submit an application in accordance with section 192.42, accompanied by a proper filing fee and the first year's rental of 50 cents per acre or fraction thereof.''

later Eagle entered into a new drilling agreement with the Chieftan Oil Company whereby Eagle reserved definite interests in the productive wells to be drilled by Chieftan. After executing the drilling contract, Chieftan proceeded with its performance. Although it expended large sums of money in repairing roads to the property, appellant at no time made objection during the performance of such acts prior to filing of the instant action, with the exception of serving his notice of rescission and demand for possession.

Chieftan's acts were performed with appellant's knowledge and acquiescence; he made neither claim nor demand on Eagle at the time the latter applied for the new lease, or when Eagle posted the lessee's bond required by the lease.

█ Appellant has been guilty of laches and unreasonable delay in the prosecution of this action. During such period, by virtue of its expenditures for land rental, bond premiums, filing fees, attorney's fees and administrative costs and of its liabilities incurred by agreements in writing relating to the leased property, Eagle's leasehold rights cannot be defeated by appellant's belated complaint of Eagle's failure to comply with the provisions of the first lease or of the breach of the assignment thereof. Every defendant is in equally as secure a position in that he has contributed funds for such expenditures and for the reduction and elimination of indebtedness. Eagle, its officers and directors, subjected themselves to liability in order to procure the issuance of a lessee's bond July 1951, without which a new lease would not have been issued to Eagle on August 1, 1951. Without such new lease there would have been nothing to give rise to appellant's action inasmuch as the new lease would not have been issued but for such expenditures. By reason of the above facts, it would not be fair, just or equitable to allow appellant to prevail with this action.

By finding such facts, the trial court correctly disposed of appellant's action. If he did not bow out by his assignment of the first lease to Eagle and by his receipt of the consideration for the lease, he severed all connection with the property (1) when his lease expired; (2) when he acquiesced in the new lease to Eagle and in Eagle's contract with Chieftan Oil for the drilling of wells; (3) by his standing silently by as Eagle and Chieftan expended large sums in protecting their title and in conducting a drilling campaign on the leased land. If he had believed himself to be invested with title to a lease on the property, he would, as a reasonably prudent

operator have asserted his claim when the Land Office made the second lease to Eagle, and as an honest operator he would have advised both corporations of his claims when they continued to expend moneys to protect and develop ‘the lease. Appellant's notice of rescission had no factual basis. He had exchanged his lease for shares in Eagle. A failure to deliver them is not presumed to have been a fraudulent inaction.

Without a transcript of the evidence, it is not possible to determine that the findings made were not justified. Coming here with only the clerk's transcript, such findings are presumptively correct. Exhibits do not necessarily constitute all the evidence of a trial. If overwhelming evidence contrary to the findings had been adduced, it could effect no change in the judgment roll so long as such evidence is not before this court. (*Woodmen of the World* v. *Rutledge,* 133 Cal. 640, 644 [65 P. 1105].) It was incumbent upon appellant to produce the evidence here which he contends would have required a different finding; having failed to do so, he gets no relief. (*Citizens National Trust & Sav. Bank* v. *Maher,* 6 Cal.2d 386, 388 [57 P.2d 917].) A mere recital of grievances will not suffice.

The conclusions of the trial court are correct.

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 15, 1955.